UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF RHODE ISLAND

<u>Edward Dwyer</u>

 v.           Civil No. 10-cv-255-JD

<u>Sperian Eye & Face
Protection, Inc.</u>

## O R D E R

Edward Dwyer brought suit in state court against his former employer, Sperian Eye & Face Protection, Inc., alleging that he was terminated from his job because of his age in violation of the Age Discrimination in Employment Act ("ADEA"), the Rhode Island Civil Rights Act ("RICRA"), and the Rhode Island Fair Employment Practices Act ("RIFEPA"). Sperian removed the case to this court. Sperian moves for summary judgment, contending that the undisputed facts show that Dwyer's employment was terminated as part of a reduction in force, not because of his age. Dwyer objects to the motion.

### Standard of Review

Summary judgment is appropriate if the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ.

P. 56(a).  A genuine issue of disputed facts requires "an actual controversy over facts that might affect the outcome under the governing law."  Rodriguez v. Municipality of San Juan, 659 F.3d 168, 179 (1st Cir. 2011).  When the nonmoving party bears the burden of proof, to avoid summary judgment based on a properly supported motion, he must present "definite, competent evidence" to support his claims.  Colon-Fontanez v. Municipality of San Juan, 660 F.3d 17, 38 (1st Cir. 2011).  The court considers the undisputed facts and all reasonable inferences from those facts in the light most favorable to the nonmoving party.  Estate of Hevia v. Portrio Corp., 602 F.3d 34, 40 (1st Cir. 2010).

Background

Sperian, which is owned by Honeywell, manufactures and sells safety products and is located in Smithfield, Rhode Island.  In 2006, Sperian hired Dwyer and Andrew Meade as Senior Cost Accountants.  A Senior Cost Accountant oversees a division's cost control systems, manages and interprets audits, and prepares cost accounting reports.  As part of the job, a Senior Cost Accountant works collaboratively with the business units he supports and must respond to the units' requests for information and for help in understanding accounting reports.  At the time they were

hired, Sperian was fifty-eight years old and Meade was thirty-two years old.

Initially, Dwyer was responsible for supporting the Sperian units that were located in Rhode Island. Meade provided support for the Sperian satellite units in other states. In early 2008, Smith switched Dwyer's and Meade's positions so that Dwyer then worked with the satellite units and Meade worked with the Rhode Island units.[1]

Gerald Smith, Sperian's Vice President of Finance, and Palmina Arpino, Sperian's Senior Human Resources Manager, were involved in hiring and employment review for Dwyer and Meade. Both Meade and Dwyer reported to Smith. In his performance review for 2008, Smith rated Dwyer for "Critical Goals & Objectives" as fully effective in two categories, partially effective in one category, and significantly effective in one category.[2] Other parts of Smith's evaluation were generally

---

[1] Smith explains that the change was made because managing local units required more personal interaction and he wanted to minimize Dwyer's face-to-face contact with others due to his unprofessional and rude conduct.

[2] The range of performance ratings in the evaluation, from best to worst, was "exceptional," "significantly above target," "fully effective," "partially effective," and "unsatisfactory." Smith assigned "SE" to one category, which is not a listed rating, and is interpreted to mean "significantly effective," which may be between "significantly above target" and "fully effective."

positive.  Improvement areas listed are a need to "[b]roaden exposure outside cost accounting," "[c]ontinue relationship building," and "[c]ontinuous improvement of Fendall and Vision screener standard costing."  The evaluation stated that Dwyer needed training and development to improve his communication skills and to broaden his skills and understanding in manufacturing.  Dwyer's overall performance was rated as fully effective, the middle level of the rating system.[3]

In his self evaluation, Dwyer stated that he needed to develop his communication skills to be more effective in his position.  He further stated:  "The position I'm requires [sic] me to measure performance, not everyone likes to be measured.  Therefore, I need to build that trust and communication skill."  Dwyer stated that he would like to attend a Dale Carnegie course on communications and human relations.  He said that his manager

---

[3]Dwyer's performance reviews for 2006 and 2007 also indicate that Dwyer needed to improve his relationships with others in the company.  In his 2007 review, Dwyer wrote:  "I've been labeled as a person that is hard to work with, so I find it a challenge to be take [sic] seriously, while I've been given no specifics as to why this label had been given to me or by who [sic], I've been working hard to over come [sic] this perception."  In contrast, Meade's evaluations show that he had no problems interacting with coworkers and others.  In 2008, Smith wrote that "[p]eople enjoy working with Andrew [Meade] because of his skill set and performance."  Although both Dwyer and Meade ranked overall at the middle level, "fully effective performance," Meade did not have issues with interpersonal relationships, as Dwyer did.

4

gave him all necessary support and direction.  He also said that he hoped to move into a more responsible position.

Smith states that other employees at Sperian found Meade easier to work with than Dwyer and that mangers reported difficulty in working with Dwyer.[4]  Smith also states that Meade's communication skills were better than Dwyer's.  Arpino states that she became aware that multiple employees had difficulty communicating with Dwyer and that other employees reported Dwyer used a harsh and caustic tone with coworkers.  Arpino states that she talked to Dwyer about his communication problems and attempted to coach him on ways to better communicate to avoid offending others.[5]  Arpino and Smith also discussed Dwyer's behavior.

---

[4]Dwyer challenges Smith's statement that other employees complained about Dwyer's unprofessional conduct on the ground that it is hearsay.  Dwyer offers no developed argument to support his assertion that the statement should be struck.  In addition, Dwyer's own comments in his annual evaluations support Smith's statements.  Because Smith is recounting his own experience and his firsthand knowledge, in the absence of a properly developed argument to support striking the statement, Dwyer's request is denied.

[5]Dwyer denies that Smith or Arpino ever brought such complaints to his attention or counseled him in ways to improve his communication with his fellow employees.  Dwyer's self evaluation, however, acknowledges that he needed to improve his communication skills, which contradicts his affidavit statements.

5

Smith and Arpino represent that in 2008 Sperian was affected significantly by the recession and experienced a reduced demand for its products.[6] As a result, Sperian instituted layoffs of its employees that occurred in three steps and resulted in layoffs of forty-five employees. At the third step, Sperian decided it needed only one Senior Cost Accountant, not two.

Smith and Arpino created an evaluation matrix to decide whether Meade or Dwyer would stay. Smith then used the matrix to evaluate Meade and Dwyer and found that Meade had a higher score, based on his interpersonal and communication skills. As a result, Dwyer's employment with Sperian was terminated on May 27, 2009. Meade was retained as the Senior Cost Accountant.

## Discussion

Dwyer brings a federal claim of age discrimination under the ADEA and state law claims of age discrimination under the RIFEPA and RICRA. Sperian contends that it is entitled to summary

---

[6] Dwyer challenges Smith's and Arpino's knowledge of the company's finances, despite their positions in the company as Vice President of Finance and Senior Human Resources Manager. The only factual basis Dwyer provides to support his contrary belief that the company was not affected by the 2008 recession is that he did not notice a change in profits, that he remembered a company press release of increased profits in 2008, and that he saw a newspaper article about Sperian being bought out. Dwyer did not provide competent evidence to support his contrary view about Sperian's financial situation in 2008.

judgment on all of Dwyer's claims because he cannot show a genuine issue of material fact to support his claim that his employment was terminated because of his age.

A. ADEA Claim

The ADEA prohibits employers from discharging an employee based on the employee's age. 29 U.S.C. § 623(a)(1). To prove a claim under the ADEA, "plaintiffs must 'establish that age was the "but-for" cause of the employer's adverse action.'" Velez v. Thermo King de P.R., Inc., 585 F.3d 441, 446 (1st Cir. 2009) (quoting Gross v. FBL Fin. Servs., Inc., --- U.S. ---, 129 S. Ct. 2343, 2351 (2009)). That is, "an employee shoulders the burden of proving that his age was the determinative factor in his discharge." Bonefont-Igaravidez v. Int'l Shipping Corp., 659 F.3d 120, 123 (1st Cir. 2011). When an employee lacks direct evidence of discrimination, ADEA claims are analyzed under the McDonnell Douglas framework.[7] Id.; Velez, 585 F.3d at 447 n.2 (1st Cir. 2009).

Under the McDonnell Douglas framework, the employee "bears the initial burden of establishing a prima facie case of age discrimination." Bonefont-Igaravidez, 659 F.3d at 124. When an

---

[7] See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-05 (1973).

7

employee loses his job as part of a reduction in force, to make a prima facie case "he must show that he was at least 40 years old; that his job performance met his employer's reasonable expectations; that he experienced an adverse employment action; and that younger persons were retained in the same position or that the employer otherwise did not treat age neutrally." Currier v. United Techs. Corp., 393 F.3d 246, 254 (1st Cir. 2004). A prima facie case raises an inference of discrimination "thereby shifting the burden to the employer to articulate a legitimate, non-discriminatory reason for the termination." Bonefont-Igaravidez, 659 F.3d at 124. "If the employer does so, the burden reverts to the employee to show, by a preponderance of the evidence, that the employer's proffered reason for the adverse employment action is pretextual and that the true reason for the adverse action is discriminatory." Id. (internal quotation marks omitted).

In this case, Dwyer lacks direct evidence of discrimination and invokes the McDonnell Douglas framework. Dwyer was sixty-one years old when he was terminated. Dwyer received average overall performance evaluation scores, despite his relationship and communication issues, and therefore for purposes of summary judgment is deemed to have met Sperian's performance standards. Meade, who was retained as the Senior Cost Accountant, is a

younger person.  Therefore, for purposes of summary judgment, Dwyer has made a prima facie case of discrimination.

Sperian responds that Dwyer was terminated as part of the reduction in force because his performance as a Senior Cost Accountant was inferior to Meade's performance due to Dwyer's difficulties with personal relationships and communication.  The record facts provide support for Sperian's reason.  Because an "employer need do no more than articulate a reason which, on its face, would justify a conclusion that the plaintiff was let go for a nondiscriminatory motive," Sperian has met its burden of production, causing the burden to shift back to Dwyer.  <u>Bonefont-Igaravidez</u>, 659 F.3d at 124.

To show that Sperian's articulated reason for terminating him was pretext for age discrimination, Dwyer can show "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in [Sperian's] offered reasons for the termination that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons."  <u>Id.</u> (internal quotation marks omitted).  It is not enough, however, to challenge tangential aspects of the employer's reasons.  <u>Id.</u> at 125.  Instead, Dwyer "must elucidate specific facts to support the proposition that [Sperian's] reason for termination is not only a

9

sham, but a sham intended to cover up its real motive of discrimination." Id. (internal quotation marks omitted).

Dwyer contends that Sperian lacks evidence that he was terminated as part of a reduction in force. Dwyer is mistaken and misapprehends the burden of proof. The affidavits of Smith and Arpino provide sufficient facts to show that Dwyer was terminated as part of a reduction in force. Dwyer's unsupported recollections about Sperian's finances and profitability do not create a factual dispute about whether he was terminated as part of a reduction in force.

Dwyer also contends that the evidence does not support Sperian's assertion that his employment was terminated because of his performance, particularly his ability to communicate and relate to other employees. Both Smith and Arpino are competent to provide evidence pertaining to Dwyer's performance and both explain the difficulties noted with Dwyer's ability to relate to and communicate with others. In addition, Dwyer's own evaluations of his performance acknowledge his problems with communications and that others perceived him to be a problem employee. Therefore, Dwyer's arguments in his objection to the motion for summary judgment do not establish contrary facts for purposes of showing a material factual dispute.

In addition, Dwyer asserts that the evaluation matrix Smith used in making the termination decision was subjective, was inconsistent with Dwyer's previous performance evaluations, and was inconsistent with Sperian's job description for the Senior Cost Accountant position. See, e.g., Currier, 393 F.3d at 255. Specifically, Dwyer challenges the categories for "Respect for the Individual," "Communication Skills," and "Interpersonal Skills." Dwyer notes that his lower scores in those categories accounted for his overall score being one point lower than Meade's score.

Dwyer is incorrect that his scores on the matrix are inconsistent with his prior evaluations. Dwyer is also incorrect that his prior evaluations lack evidence of communication and interpersonal relationship difficulties. Therefore, his ratings in the matrix are consistent with his prior performance evaluations.

Although the matrix categories Dwyer cites require somewhat subjective judgments, because the ratings are supported by the prior evaluations, the subjective element is not particularly persuasive. Further, Sperian's job description for the Senior Cost Accountant position includes a section titled, "Contacts with Others." In that section, Sperian explains that the position requires frequent contact with other employees and that

11

"[f]ocus on process improvement may require extreme tact and discretion, since influence is required to change the way work is accomplished." As such, communication and interpersonal skills were included as important aspects of the Senior Cost Accountant position.

Sperian further notes that unlike the plaintiff in Currier, Dwyer lacks any evidence that Sperian discriminated on the basis of age. Cf. 393 F.3d at 253. In the absence of evidence of discriminatory animus, even if Sperian incorrectly assessed Dwyer's skills, a merely mistaken decision is not a discriminatory decision. See Davila v. Corp. de P.R. Para La Difusion Publica, 498 F.3d 9, 17 (1st Cir. 2007). "Thus, as long as [Sperian] believed that [Dwyer's] performance was not up to snuff-and [Dwyer] has presented no evidence suggesting that management thought otherwise-it is not our province to second-guess a decision to fire him as a poor performer." Id.

Dwyer cannot show a disputed issue of material fact to support his burden of showing that Sperian's articulated reason for terminating his employment was a pretext for age discrimination. Therefore, Sperian is entitled to summary judgment on Dwyer's ADEA claim.

B.  State Law Claims

Dwyer also brought claims of age discrimination, based on his termination, under the RICRA and RIFEPA.  The RICRA and RIFEPA both prohibit discrimination in employment because of age.  See Neri v. Ross-Simons, Inc., 897 A.2d 42, 48 (R.I. 2006); Horn v. S. Union Co., 927 A.2d 292, 295-98 (R.I. 2007).  Claims brought under the RICRA and RIFEPA are analyzed under the same burden-shifting framework that is used in an ADEA analysis.  Rathbun v. Autozone, Inc., 361 F.3d 62, 71 (1st Cir. 2004); Schumacher v. Fairfield Resorts Inc., 2008 WL 821569, at *7 (D.R.I. March 27, 2008) (citing Neri, 897 A.2d at 48).

Dwyer states that his state law claims are not governed by the analysis of his ADEA claim because the claims are not identical.  In support, Dwyer argues that Rhode Island courts have relied on Title VII cases in deciding state law discrimination cases, that Title VII and the ADEA are separate statutes, and that the ADEA does not encompass mixed motive cases.  Although the argument is far from clear, to the extent Dwyer contends that his state law claims may include a mixed motive theory under a more relaxed burden of proof and that a Title VII instead of an ADEA analysis would apply, his argument fails.

13

In Gross, the Supreme Court held that mixed motive claims were not subject to a more lenient standard under the ADEA. 129 S. Ct. at 2351. Instead, a plaintiff must prove a mixed motive theory under the same "but for" standard that would apply to any age discrimination claim. Id. State law age discrimination claims, however, may retain the more lenient mixed motive standard. See, e.g., Cameron v. Idearc Media Corp., 2011 WL 4054864, at *6 n.9 (D. Mass. Sept. 9, 2011) (considering Massachusetts claim).

Dwyer does not show that this is a mixed motive case, stating only that there might be a "potential mixed motive instruction to the jury on the state law counts." Even if mixed motive were an issue in this case, however, Dwyer makes no developed argument that the Rhode Island Supreme Court would analyze mixed-motive age discrimination claims under the RIFEPA and RICRA differently than the analysis used in Gross. Dwyer does not cite a case to support his theory of a different analysis for a mixed-motive state law claim. In the absence of a developed argument, the court will not consider Dwyer's theory. See Coons v. Indus. Knife Co., Inc., 620 F.3d 38, 44 (1st Cir. 2010).

Therefore, Sperian is entitled to summary judgment on Dwyer's state law claims.

Conclusion

For the foregoing reasons, the defendant's motion for summary judgment (document no. 30) is granted.

The clerk of court shall enter judgment accordingly and close the case.

SO ORDERED.

_____
Joseph A. DiClerico, Jr.
United States District Judge
Sitting by designation.

January 3, 2012

cc: Peter E. Hutchins, Esquire
    Robert J. Meagher, Esquire
    Michael W. Wallenius, Esquire